Stanard, J.
The right of a surety to the aid of a court of equity, to compel the principal to pay the debt, and thereby exonerate him, is sustained by numerous decisions (some of which were cited at the bar) and rests on the soundest principles of natural justice. This is so free from doubt, that lord Thurlow, in the case of Nisbet v. Smith, said it had never been disputed. And the surety is entitled to resort for his indemnity to all the securities which the creditor holds. These rights combined, manifestly sustain the claim of the surety, seeking the aid of equity for his exoneration by compelling payment from the principal, to make the existing liens and securities of the creditor subservient to that end. Such is the nature of the claim set up by the bill in this case. It is true, the right of subrogation is asserted in the body of the hill, but the prayer is, in effect, that the lien of the creditor shall be upheld and dedicated to the protection and exoneration of the sureties, and for general relief. I do not doubt that the bill presents a fit case for relief in equity.
The title to this relief is encountered by various objections, founded on the facts developed by the pleadings and proofs, which have been urged by the appellant’s counsel with earnestness and ability.
*586 It is objected, that an amount sufficient for the indemnification of the sureties, part of the subject mortgaged for that purpose by the deed of trust of July 1835, remains unadministered, and that that subject should be exhausted, before the lien of the judgment on the land should be enforced, to the disappointment of the appellant, who is the subsequent incumbrancer of the land : in effect, that as the appellees, who claim under the elder incumbrance, have two funds for their indemnity, and the appellant is the junior incumbrancer on one of them, the appellees should not have that one charged with their claim, till the other shall be applied and exhausted. If both funds were equally accessible and available, or could be made so by the court, the equity to apply the fund not directly charged by the junior incumbrancer, would be plain and incontestable. But that is not the case here. The productiveness of the unadministered subject of the trust of July 1835, is, in all probability, precarious as to the amount, and the time when it may be realized is indefinite. If the objection were sustained, it would leave the claimant under the junior and subordinate title, predominant over the elder and superior: it would give the junior and subordinate incumbrancer possession of a certain and adequate fund, while the elder and superior would be put upon the tedious and perhaps fruitless pursuit of satisfaction from a doubtful and discredited security. This is forbidden by the general principles of equity: the general rule -entitles the elder and superior claim to satisfaction out of the fund most certainly productive and most accessible, whenever the junior can, by subrogation or otherwise, have the benefit of the fund liberated by such satisfaction. Here, if any thing shall in future be realized from the remaining subject of the trust of July 1835, Kent, the junior incumbrancer, having the subject embraced by his incumbrance withdrawn from him to satisfy the elder and superior claim of Matthews and Jackson, will be entitled to indemnification from it.
*587 It is further objected, that the sales of the trust slaves mortgaged by the deed of July 1835, produced enough for the full indemnification of the appellees, and that, as between the parties to this controversy, the claim of the appellees rests on the ground they Avould have occupied, if the whole amount produced had been duly applied; because, it is said, by their consent or acquiescence, 1000 dollars, part of the proceeds of sale, was retained by English, and by the improvidence of one of them, acting as agent to make the sale of the slaves, and the subsequent assent or acquiescence of them both, the bill of exchange Avas received, instead of money, as part of the proceeds of sale. To the first member of the objection, a ready and effectual answer is furnished by adverting to the position of the parties at the time when the proceeds of the sale of the slaves Avere accounted for, and the rights and obligations of the parties to that transaction. The settlement between Eulton the trustee, Jackson the agent of sale, and English who accompanied the agent and cooperated with him in making the sale, was made in March 1836. At that time, judgments had been rendered for the debt for which Matthews and Jackson were sureties, and for the other debts secured by the same deed of trust; and the security furnished by the deed of trust was reinforced by the liens of those judgments on English’s land. And at that time, Kent had no lien on the land; the deed of trust under which he claims was not executed till November following. Kent, consequently, had no rights to be affected by any arrangement between English and the creditors claiming under the mortgage of the slaves, whereby a part of the proceeds of the trust slaves Avas permitted to be applied to the use or to other responsibilities of English. The utmost effect of the permission, was a surrender of the lien of the creditors on so much of the fund thus diverted from the purposes of the trust, and no wise impaired the lien of the creditors on the residue of the *588 trust subject, or on English's land. Nay, a total release the security of the deed of trust of the slaves, would not, in any degree, have impaired the lien of the judgments, in favour of Kent, who had then no lien with which that of the judgments interfered. These remarks supply an answer to the other part of the objection, founded on the receipt of the bill of exchange. That was a transaction of English, or, at least, one in which he participated, and of which he could not complain: the receipt of the trustee for it was given to English. At the time it was received, the creditors might have consented to substitute the bill of exchange in place of money for their security, and to permit English to apply the money to other uses or responsibilities, even though it had distinctly appeared that the whole proceeds of sales of the slaves had been received in money, without impairing the liens of their judgments, so far as the appellant, who had then no lien, was concerned.
Another objection is, that the lien of the judgment, in its utmost extent, covered only a moiety of English's land, and that the utmost that ought to have been decreed by the court to the exoneration or indemnity of Matthews and Jackson, was a moiety of the net proceeds of sale. My impression is that the appellant’s counsel were right in the principle on which they founded this objection; but though this be so, it is my distinct opinion, that this case does not present a fit occasion for the application of the principle. If the judgment under which the appellees claim, had been the only one of the claims secured by the mortgage of the slaves for which there was a lien on the land, the case would be one for the application of the principle, or for a judicial ascertainment of its soundness. But, in this case, all the other claims secured by the mortgage of the slaves, were liens on the land, and many, if not all, the judgments for them which gave those liens, were *589 rendered at the same court (September 1835) at which the judgment was recovered against Matthews and Jackson ; and by those liens the whole land was chargeable and liable to extent. Those claims charged the entirety of the proceeds of sales of the mortgaged slaves. The application of the proceeds of either subject to satisfy one or more of the claims, with or without the consent of the creditors holding the other claims, left the unsatisfied claimants incumbrancers on the residue of both the subjects, and clothed with all the rights of the satisfied claimants, necessary to secure the application of that residue to the other claims. The moment that a part of the proceeds of the slaves, which might have been applied to the partial indemnity of the appellees, was applied to the satisfaction of other claims which equally bound and might have been satisfied out of the land, a title vested in the appellees, sustained by plain equity, to have the unapplied lien on the land appropriated to supply the deficiency caused by withdrawing from their indemnity the proceeds of the slaves. And the lien, which the appellant subsequently acquired by the deed of November 1836, cannot control or impair this elder and superior equity.
The balance due on the judgment of Pierce’s administrator was 1753 dollars 53 cents, with interest on 1325 dollars, principal, from the 24th February 1840, and such is the balance shewn by the commissioner’s report. That was the measure of the lien on the land, whether the proceeds of the land were applied by the decree to the exoneration of the sureties Matthews and Jackson by decreeing payment to the creditor, or to their indemnity by decreeing payment to them in reimbursement of the money they paid in satisfaction of the judgment. The court, however, by mistake, assumed that the report shewed that 1753 dollars 53 cents, with interest on the whole sum from the 24th February 1840, was due on the judgment, and charged the proceeds of the land *590 accordingly. This mistake, I doubt not, might and would have been corrected by application to the court below; and if the appellees had caused such correction to be made, they would, under the statute 1 Rev. Code, ch. 128. § 108. p. 512. have been entitled to an affirmance of the decree. My impression is, that as that has not been done, this court should correct the error, by reversing the decree pro tanto, giving costs to the appellant, or at least, not giving them to the appellees. But my brethren thinking that the decree should be affirmed, with the correction, and with costs to the appellees as the parties substantially prevailing, such must be the decree.
Decree corrected, and affirmed, with costs to the appellees as the parties substantially prevailing.